UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RHONDA GENTRY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:18-CV-528-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| CF KENTUCKY OWNER LLC and | ) | |
| FRIEDMAN MANAGEMENT | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is Plaintiff Rhonda Gentry's Motion to Remand this personal injury action to the Fayette Circuit Court. DE #13 (Motion). Defendants CF Kentucky Owner LLC and Friedman Management Company ("CF Kentucky" and "Friedman"; collectively, "Defendants") opposed (DE #17), and Plaintiff replied (DE #18). Because Defendants have pointed to multiple pieces of evidence that, when considered in conjunction, adequately establish the requisite amount in controversy, the Court declines to remand the case.

1. **Relevant Background**

Defendants own and manage apartment complexes in Kentucky. DE #1-2 at 6, ¶ 3. Plaintiff (whose employer provides in-home care services) was visiting a patient of her employer at one such complex—the Cedarwood Apartments—when she allegedly slipped and fell on an icy patch, injuring herself. *Id.* at 7, ¶¶ 8–10. Blaming CF Kentucky and Friedman for lax upkeep of the property, Plaintiff sued in the Fayette Circuit for personal injury damages. Defendants removed the case (originally filed on December 21, 2017, *see id.* at 11) to this Court in September 2018 based on diversity jurisdiction. DE #1 (Notice of Removal). Just over a month later, Defendants

(unopposed) sought leave to add their snow and ice removal vendor as a third-party defendant, which this Court granted. DE ##8, 14. On October 30, 2018, Plaintiff filed her motion to remand, arguing failure of the amount in controversy requirement.[1] DE #13.

2. **Removal Standard**

Removal is proper if the plaintiff could have originally brought the case in federal court. 28 U.S.C. § 1441(a). Defendants based removal exclusively on diversity jurisdiction, which exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). The amount in controversy must exceed the jurisdictional minimum at the time of removal. *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000); *see also Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007). The burden rests on the removing party to demonstrate the amount in controversy requirement by a preponderance of the evidence. *See Gafford v. Gen. Elec. Co.*, 997

---

[1] Defendants argue, in part, that Gentry waived her jurisdictional objection because she failed to object to removal within thirty days. DE #17 at 4–5; *see* 28 U.S.C. § 1447(c) (stating that a motion to remand based on "any defect other than lack of subject matter jurisdiction" is due within thirty days of removal). Defendants misconstrue Plaintiff's argument; she does not merely complain that Defendants inadequately alleged the amount of controversy in their Notice, but, rather, she argues an inadequate amount in controversy. *See* DE #13-1 at 3 ("The Defendant has failed to meet its burden that the Court has original jurisdiction to hear this matter."). And, the amount in controversy requirement—which decidedly encompasses a temporal component—goes to the heart of the subject matter jurisdiction inquiry. *See, e.g.*, *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal."); *see also Nowicki-Hockey v. Bank of Am., N.A.*, 593 F. App'x 420, 422 (6th Cir. 2014) (requiring the defendant "to demonstrate by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of removal" to establish subject matter jurisdiction). Courts have an omnipresent duty to assess and confirm the existence of subject matter jurisdiction; parties (or the Court) can raise the issue at any time, and no party can waive the requirement. *See Young v. United States*, 332 F.3d 893, 895 (6th Cir. 2003) (citing *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 629–30 (6th Cir. 1992)) ("[A] party may raise the question of subject-matter jurisdiction at any time."); *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235, 1244 (2006) (noting the Court's "independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party").

F.2d 150, 158 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010); *see also Northup Props., Inc. v. Chesapeake Appalachia, LLC*, 567 F.3d 767, 769–70 (6th Cir. 2009) ("The burden is on [the removing party] to show by a preponderance of the evidence that the allegations in the complaint at the time of removal satisfy the amount-in-controversy requirement.").

In matters removed from Kentucky state courts, the amount in controversy is frequently unclear from the face of a complaint because the Kentucky Civil Rules bar plaintiffs from specifying the amount of unliquidated damages they seek. *See* Ky. R. Civ. P. 8.01(2). Parties thus often must engage in pre-removal discovery before a defendant can ascertain that the amount in controversy exceeds $75,000, exclusive of interest and costs, and successfully remove the case. A removing party may satisfy the requirement via "competent proof" of the at-issue amount, *see Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010), which "can include affidavits, documents, or interrogatories" obtained during pre-removal discovery. *Bishop v. Tennessee Gas Pipeline, LLC*, No. 5:17-CV-00424-JMH, 2018 WL 4686416, at *2 (E.D. Ky. Sept. 27, 2018). The Court evaluates such proof against the backdrop of "a 'fair reading' of the allegations in the complaint." *Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x 476, 478 (6th Cir. 2014) (quoting *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001)). Where uncertainty clouds the propriety of removal, courts must strictly construe removal statutes and resolve all doubts as to jurisdiction in favor of remand. *See, e.g.*, *Brierly, v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).

   3. **Amount in Controversy Analysis**

Indeed, here, Plaintiff did not specify any amount of damages in her Complaint. The Complaint merely alleges that Gentry seeks damages in excess of the Fayette Circuit's

3

jurisdictional minimum, DE #1-2 ¶ 5, and includes a general list of types of damages she seeks, *see id.* at ¶ 14 (noting that damages "include[e], but [are] not specifically limited to, medical expenses, lost wages, permanent impairment to earn a living, pain, suffering, and emotional anguish, all past and future"). The Complaint does not elaborate further on damages sought. Defendants thus proffer two pieces of evidence obtained in pre-removal discovery to establish a sufficient amount in controversy. First, they cite a response to their request for admission (DE #1-3), which states as follows:

> **REQUEST NO. 1:** Admit that the total amount of damages you are seeking in good faith in this matter, exclusive of interest and costs, is less than or equal to $75,000.
>
> **RESPONSE:** Objection. This request is premature as the plaintiff is still seeking treatment for her injuries and it cannot be determined what her total damages are at this stage of the litigation. Furthermore, the plaintiff is also a claimant in a pending workers compensation claim, which to date has not been resolved. Pursuant to operation of KRS Ch. 342 *et seq.*, the resolution of the workers compensation claim through settlement or adjudication may significantly affect the damages in the instant case. Thus, after making a reasonable inquiry, the information which is known or readily attainable by the Plaintiff at this point is insufficient to enable her to admit or deny this request.

The timing matters: Gentry fell in January 2017 and filed suit in December 2017. The response at issue happened in August 2018, a month before removal.[2] Second, Defendants cite Plaintiff's own (inverted) request for admission, which states as follows: "Admit that the Plaintiff's total damages related to the incident giving rise to this lawsuit, including past and future medical expenses, lost wages, lost power to labor and pain and suffering exceed Seventy-Five Thousand Dollars ($75,000)." *See* DE #1-4. While denying that Plaintiff was entitled to any damages, Defendants stated that they had insufficient information to answer this request fully; they further stated their belief that Plaintiff sought more than $75,000 based on the request itself and Plaintiff's response

---

[2] That Gentry was still treating 1.5+ years post-injury provides circumstantial insight into the extent of her injuries.

to Defendants' former request for admission. *See* DE #13-1 at 2–3. Defendants argue that Plaintiff's request for admission demonstrates that she herself valued the litigation in an amount exceeding the requisite amount.

In addition to these pieces of evidence, Defendants contend that Plaintiff's admission that she had incurred approximately $26,000 in medical expenses at the time she moved, in October 2018, for remand (*see* DE #13-1 at 6) provides context to value her claim at the time of removal.[3] Combined with the other categories of damages Plaintiff seeks, Defendants reason that it is more likely than not that the amount in controversy exceeds the threshold. As Defendants point out, other courts have found that medical expenses can meter related damages such as pain and suffering. *See, e.g.*, *Fisher v. May*, No. 3:11-CV-00592, 2012 WL 1964564, at *2 (W.D. Ky. May 31, 2012) (applying a 5:1 multiplier to medical expenses to calculate potential pain and suffering values); *see also Fenton v. Speedway, LLC*, No. 5:13-CV-063-DCR, 2013 WL 2422877, at *2

---

[3] Plaintiff maintains that "a large part" of this amount has been paid by her employer in the form of worker's compensation benefits. *See* DE #13-1 at 4. The parties devote much briefing to whether the availability of worker's compensation benefits for the injuries at issue in this case—and, conversely, the unavailability of double-recovery on that amount—reduces the amount in controversy in this litigation. The Court agrees with Defendants that it does not. Both sides accurately note that the worker's compensation claim likely will impact the amount of Plaintiff's eventual net recovery from Defendants; however, Plaintiff's likely recovery amount is not the focus. *See, e.g.*, *Grady v. Dayton Hudson Corp.*, 610 F. Supp. 258, 259 (E.D. Mich. 1985) (quoting Wright, Law of Federal Courts § 33 at 127 (3d ed. 1976)) (explaining why "[t]he amount in controversy cannot be made dependent on the amount the plaintiff will ultimately recover[]"). KRS § 342.700 expressly permits Plaintiff to simultaneously proceed against Defendants and to pursue a worker's compensation claim; concluding that the amount in controversy cannot be determined for jurisdictional purposes until the latter ends would indefinitely delay (and thus likely preclude) removal in nearly every case involving a potential worker's compensation claim. Plaintiff's ultimate recovery—either from Defendants or via worker's compensation—cannot control the amount in controversy analysis. Further, Plaintiff's claimed injuries will define the "matter in controversy," either directly or in protection of a worker's comp subrogated interest. The comp statute makes clear that a carrier may assert a claim in the employee's name. *See* KRS § 342.700(1). Additionally, because of statutory limits, a comp recovery on, *e.g.*, wages, typically would not be dollar for dollar as to the employee's loss. *See, e.g.*, KRS § 342.140. For all of these reasons, the potential comp offset does not reduce the controversy scope in the case.

(E.D. Ky. June 3, 2013) ("Based on the amount of past medical expenses claimed [in an amount exceeding $27,000], and considering a reasonable multiplier for allegations of pain and suffering, it is reasonable to assume that [the plaintiff] will seek damages exceeding $75,000.00, exclusive of interest and costs.").[4]

While none of these things, alone, carries Defendants' burden, they, with the Complaint's damage categories, collectively surpass the jurisdictional threshold. The first piece of evidence, without more, would be insufficient to support federal subject matter jurisdiction. *See Lobley v. Guebert*, No. 5:16-CV-202-TBR, 2017 WL 1091796, at *1 (W.D. Ky. Mar. 22, 2017) (holding that a response refusing to admit or deny that the amount in controversy exceeded the jurisdictional minimum, standing alone, was insufficient); *cf. Miller v. Malik*, No. CIV. 11-74-ART, 2011 WL 2968428, at *2 (E.D. Ky. July 20, 2011) (viewing the plaintiff's refusal to deny the defendant's request for admission that damages exceeded $75,000 as "at least some evidence that her damages [we]re more than that amount" and, coupled with other evidence, as satisfying the amount in controversy). As in *Miller*, however, Plaintiff's refusal to deny that her damages exceeded the requisite amount when given the opportunity—while not dispositive of the jurisdictional inquiry—is "at least some evidence" that Gentry was seeking more than the minimum.[5] 2011 WL 2968428, at *2.

---

[4] Consistent with the principle that courts must analyze the amount of controversy from a vantage point on the removal date, courts may nevertheless consider evidence submitted after that date, where it is probative of the amount that was likely in controversy at the time of removal. *See, e.g.*, *Havener v. Richardson*, 198 F.3d 245 (Table), No. 98-1971, 1999 WL 993757, at *2 (6th Cir. 1999) ("[T]he scope of damages whose amount is not specified may be developed through evidence submitted after the original complaint, if jurisdiction is challenged at a later stage.").

[5] Plaintiff seeks to distinguish *Miller* on two grounds: (1) unlike the plaintiff in that case, Gentry adequately responded to Defendants' request per the Kentucky Rules; and (2) the *Miller* court worried that the plaintiff was avoiding removal "by stonewalling and providing incomplete discovery responses until the one-year time limit for removal ha[d] elapsed[,]" either as a result "of poor preparation or deliberate evasion[]" in terms of assessing her damages. 2011 WL

Defendants' second piece of evidence[6] would be likewise unconvincing without more. Even accepting Plaintiff's propounded request as evidence of her own estimation of her claims, it would be inadequate alone because the language of Plaintiff's request is insufficient to show that she valued the case at an amount exceeding $75,000 *exclusive of interest and costs*. *See* 28 U.S.C. § 1332(a). While technical, this omission is relevant; if a claim merely exceeded the minimum with the inclusion of interest and costs, jurisdiction would be fatally lacking. *See Baker v. EQT Gathering of Kentucky, Inc.*, No. CIV.A. 6:13-104-DCR, 2013 WL 5536472, at *2 (E.D. Ky. Oct. 8, 2013) (observing that, based on the clear language of the statute, "it is insufficient to allege or show that the amount in controversy exceeds $75,000.00 without addressing interest and costs[]"). However, the fact that Plaintiff asked Defendants to confirm that her claims were collectively worth more than $75,000 offers insight into the extent of her perceived damages, and, thus, is again *some* evidence that the amount in controversy requirement was satisfied. *See Mozee*, 616 F. Supp. 2d at 674 (finding that the plaintiff's request for admission that the case was valued at over $100,000, coupled with other evidence, satisfied amount in controversy requirement). The analysis

---

2968428, at *2. Although Gentry did indeed respond appropriately to Defendants' discovery request per the Rules, the fact that she could not minimally quantify her damages due to ongoing treatment assessment nearly eight months after her Complaint, and roughly a year-and-a-half after the alleged injuries, is perplexing. Regardless, while the *Miller* court discussed these considerations, its conclusion that the plaintiff's refusal to deny the discovery request provided "at least some evidence" that the jurisdictional minimum was satisfied did not explicitly depend on them. *See id.*

[6] Plaintiff contends that the substance of a party's own discovery request (as distinct from the answering party's response) is not evidence, but she cites no authority for this position. Other courts have considered such a request competent evidence in the removal context, and the Court declines to adopt Plaintiff's unsupported contrary theory. *See, e.g.*, *Mozee v. Dugger*, 616 F. Supp. 2d 672, 673 (W.D. Ky. 2009) (viewing the plaintiff's request for admission that "ask[ed] Defendants to admit that Plaintiff was entitled to $100,000 in pain and suffering" as contributing to the collective quantum of evidence supporting removal). Competent proof includes "other paper[s]" such as interrogatories and discovery requests, and while this often comes in the form of the portion of the paper providing "answer" to a discovery request, the Court perceives no authority for artificially limiting it to such. *See* 28 U.S.C. § 1446(b).

would be context-specific. Here, where the request by Plaintiff was part of the pre-removal jousting, it is fair to view the effort as a veiled stab at pushing Defendants to concede a case of greater economic scope. Indeed, the proponent of a request is trying to secure a factual admission of consequence; here, if admitted, Plaintiff's request actually would have secured the federal jurisdictional level. This is hardly definitive, but the posited request sheds light on the question of the matter in controversy.

Back to the timeline and the state of the record at removal: the alleged fall occurred in January 2017, the suit in December 2017, removal in September 2018, and the remand motion in October 2018. Plaintiff, a "healthcare provider," DE #13-1 at 1, claimed in the Complaint that she fell and suffered significant injuries. These included past and future pain and suffering, medical expenses, and *permanent* earning impairment. DE #1-2 at 7–8, ¶ 14. When Defendants tried to clarify the claimed losses through discovery, Plaintiff (in August 2018) refused the jurisdictional admission. But in the refusal, Plaintiff conceded that she continued to receive medical treatment a full seventeen months after the fall. Further, she pointed to an open and unresolved worker's comp claim, which she described as potentially having a "significant[]" effect on the civil case. In the remand motion, Plaintiff disclosed approximately $26,000 in accrued medical expenses and that she had received "temporary total disability" benefits from the comp carrier.

Thus, when Defendant effected removal, the matter involved a personal injury claimant seeking past ($26,000) and future medical expenses, past (a period of total disability) and future wage losses (including permanent impairment), and past and future pain and suffering. Plaintiff, the case master, refused to admit that the amount sought did not exceed the federal floor, but the refusal hinged on the Chapter 342 bar to double recovery not on the actual size of losses claimed.

Defendants here have competently shown a matter within the original jurisdiction of the federal courts.

The proof obligation on a removing defendant is not a "daunting burden." *Halsey v. AGCO Corp.*, 755 F. App'x 524, 526–27 (6th Cir. 2018). *Halsey* recently confirmed that a plaintiff's refusal to admit or deny that a claim falls below the jurisdictional floor creates an inference about the plaintiff's perception and intent regarding case scope. *Id.* at 528. Further, *Halsey* endorsed an analysis accounting for known claims (such as defined medical expenses) with an additional "fair reading of the unspecified and unliquidated damages sought" (such as pain and suffering). *See id.* at 529 (quoting *Hayes*, 266 F.3d at 573).[7] The Court here follows a like path.

4. Conclusion

For the reasons discussed, the Court **DENIES** Plaintiff's Motion to Remand (DE #13).

This the 4th day of June, 2019.



Signed By:
*Robert E. Wier*
United States District Judge

---

[7] The case involved a parallel scenario:

> And that is exactly what AGCO found: one component of Halsey's damages was $42,105.36 in past medical expenses, and the other component was undetermined pain and suffering that Halsey is unable or unwilling to confirm will not cause his total damages to exceed $75,000. This combination made it more likely than not that Halsey's claims exceeded $75,000.

*Halsey*, 755 F. App'x at 529. *Halsey* also cited *Miller* with approval; *Miller*, which found the requisite federal amount, involved $28,000 in quantified damages with unspecified pain and suffering losses. *Id.*