UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| RHONDA GENTRY, ) | |
| ) | |
| Plaintiff, ) | No. 5:18-CV-528-REW |
| ) | |
| v. ) | |
| ) | OPINION AND ORDER |
| CF KENTUCKY OWNER LLC, et al., ) | |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Third-Party Defendant Diamond Landscapes, Inc. seeks judgment on the pleadings based on its vendor contract with Third Party Plaintiffs CF Kentucky Owner, LLC and Friedman Management Company. DE #27. The motion is fully briefed, DE ##32–33, and ripe for decision. Because contract ambiguity and disputed material questions of contractual intent make pleadings-based dismissal inappropriate, the Court denies Diamond's effort.

I.  **Relevant Factual and Procedural Background**

CF Kentucky and Friedman respectively own and manage apartment complexes in Kentucky, including the Cedarwood Apartments in Lexington. DE #1-2 at 5–6, ¶¶ 2–3. The Complaint (originally filed in Fayette Circuit Court) alleges that Plaintiff Rhonda Gentry—while visiting a patient of her employer, a Cedarwood tenant, on January 30, 2017—"slipped on a snowy and/or icy sidewalk . . . causing her to fall and sustain serious physical injury." *Id.* at 7, ¶¶ 8–10. CF Kentucky and Friedman removed the action to this Court in September 2018. DE #1.[1] Defendants subsequently sought leave to file a Third-Party Complaint against Diamond, their

---

[1] CF Kentucky and Friedman share common counsel in this litigation and have acted jointly to date (including submitting joint briefing on Diamond's motion here).

1

contracted snow and ice removal vendor, *see* DE #8, and the Court granted the unopposed impleader request, *see* DE #14.

The Third-Party Complaint asserts claims for breach of contract, negligence, and contractual and common law indemnity against Diamond. DE #15. It avers that, should Gentry's claims against Defendants succeed, Diamond would in turn be liable to CF Kentucky and Friedman for any resulting damages. In response, Diamond contends that the parties' vendor contract ("the Contract"), *see* DE #8-5 (Exhibit 1 to the Third-Party Complaint – Vendor Contract), conclusively establishes that Diamond had no obligation to perform sidewalk snow/ice removal services on the date of Gentry's alleged slip-and-fall. DE #27. Diamond further argues that the invoice it submitted to CF Kentucky and Friedman for services performed on January 29–30, 2017 ("the Invoice")[2] confirms that Diamond was not responsible for clearing or de-icing the Cedarwood sidewalks on that date. *Id.*; *see* DE #8-6 (Exhibit 2 to the Third-Party Complaint – Invoice). CF Kentucky and Friedman opposed DE #27, *see* DE #32, and Diamond replied, *see* DE #33.

## II. Rule 12(c) Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Rule 12(c) standard mirrors that of Rule 12(b)(6). *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v.*

---

[2] The Invoice identifies the "Date of Service[s]" as "1/29/17 SUN P.M." but includes description of services performed "in the early hours of Monday morning" (January 30). DE #8-6 at 2. The Court thus views the Invoice as spanning both dates.

2

*Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quotation marks and citation omitted). However, the Court is not required to accept as true "a legal conclusion couched as a factual allegation[,]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Rule 12(c) judgment is proper "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To survive dismissal, it must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 127 S. Ct. at 1965. In other words, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks and citation omitted). Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* simply require a plaintiff to plead facts that "raise a right to relief above the speculative level[,]" *Twombly*, 127 S. Ct. at 1965, permitting the court "to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018) (quoting *Iqbal*, 129 S. Ct. at 1949 (citation omitted)). This "plausibility standard" does not require a showing that success on the claims is *probable*, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Where plaintiffs state "simply, concisely, and directly events that . . . entitled them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347; *see also El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

However, unadorned, naked assertions warrant no presumption of truth in the plausibility analysis. *Iqbal*, 129 S. Ct. at 1949. "Plausibility is a context-specific inquiry," *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), "requiring the reviewing court to draw on its experience and common sense[,]" *Iqbal*, 129 S. Ct. at 1950. In deciding a motion for judgment on the pleadings, courts may consider (without converting the Rule 12(c) motion into one for summary judgment) "documents attached to the pleadings[,]" documents "referred to in the pleadings" and "integral to the claims[,]" and "matters of public record[.]" *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *accord Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (noting that courts "may consider those exhibits [attached to a Rule 12(c) motion] so long as they are referred to in the Complaint and are central to the claims contained therein"). The Court thus here considers the Contract and Invoice; both are referenced in, and attached and central to, the Third-Party Complaint.[3]

### III. Contract Ambiguity and Disputed Material Questions of Intent[4]

Each cause of action that CF Kentucky and Friedman assert against Diamond requires a threshold plausible showing that Diamond bore responsibility for removing snow/ice from the Cedarwood sidewalks on the date of Gentry's alleged fall.[5] Diamond (without analyzing each

---

[3] Although the Third-Party Complaint docketed post-leave at DE #15 does not include attachments, the attachments to the DE #8-proposed pleading clearly demonstrate that CF Kentucky and Friedman intended that the Contract and Invoice accompany the Third-Party Complaint as exhibits. The Court treats them as such. *See* DE #15 at ¶ 10 (referencing the Contract as attached Exhibit 1); DE #8-5 (titled "Exhibit 1 – Vendor Contract"); *see also* DE #15 at ¶ 17 (referencing the Invoice as attached Exhibit 2); DE #8-6 (titled "Exhibit 2 – Invoice").

[4] Federal courts sitting in diversity must apply the substantive law of the forum state. *See Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005). Further, the Contract expressly provides that Kentucky law applies. *See* DE #8-5 at 7 (Contract ¶ 6). The Court thus applies substantive Kentucky law to issues of Contract interpretation and to the Third-Party Complaint's claims.

[5] *See, e.g.*, *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009) (breach-of-contract claim elementally requiring the existence and breach of a contractual duty); *Keaton v. G.C. Williams Funeral Home*, Inc., 436 S.W.3d 538, 542 (Ky. Ct. App. 2013)

claim individually) challenges only this element of the case against it, arguing that the Contract and Invoice together unequivocally demonstrate that it had no duty to clear or de-ice any Cedarwood sidewalks on the date in question. *See* DE #27-1 at 4–5; DE #33 at 2 (identifying the primary issue as "whether the contract . . . required Diamond Landscapes to remove snow or ice on the sidewalk at the apartment complex") (emphasis omitted). CF Kentucky and Friedman contrarily maintain that the Contract "obligated [Diamond] to provide snow and ice removal services for the property, which included Diamond performing a site inspection to ensure that the property was 'free of ice[]'" on January 30, 2017. DE #32 at 1–2. The facts indicate a plausible claim, insofar as Plaintiff claims to have fallen on ice, and the owner/manager claim that Diamond had a duty to remove snow and ice from the sidewalks at Cedarwood. The key is the meaning of the Contract.

The Court's contractual "review must begin with an examination of the plain language of the instrument." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016). Absent ambiguity in a contract's plain language, the Court "interpret[s] the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence[.]" *Id.* (internal quotation marks and citation omitted). The Court must construe the contract "as a whole, giving effect to all parts and every word in it if possible." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384–85 (Ky. Ct. App. 2002) (quoting *City of Louisa v. Newland, Ky.*, 705 S.W.2d 916, 919 (1986)). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* Determining whether a contract is ambiguous is a

---

(negligence claim requiring establishment of duty and breach of duty); *Enerfab, Inc. v. Kentucky Power Co.*, 433 S.W.3d 363, 366 (Ky. Ct. App. 2014) (allowing indemnity per a contract's terms "if the indemnitee has suffered loss thereunder"); DE #8-5 (the Contract) at 7 (broadly providing that Diamond shall indemnify CF Kentucky and Friedman for any loss arising out of (among other things) Diamond's failure to perform or omission concerning contracted duties).

legal inquiry for the Court. *See First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000). "However, once a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become[s] subject to resolution by the fact-finder." *Cantrell Supply*, 94 S.W.3d at 385.

The Court thus looks to the four corners of the Contract.[6] Its recitals provide, in relevant part:

> B.        Whereas, Owner and Contractor desire that the Contractor assume responsibility for the following services:
>
> **Snow and Ice removal from parking lots-push and salt per occurence [sic].[7] Walkways-push and salt only when needed per call from on-site manager.** (the "**Services**"). Contractor has provided pricing for the Services and such proposals / estimates ("**Pricing**") are attached hereto as Exhibits.

DE #8-5 at 4 (Recital B) (emphasis in original).[8] The recitals continue, in Paragraph C:

> C.        Whereas, Contractor, as an independent contractor, *subject to the terms and conditions of this Contract*, agrees to use reasonable efforts and due care in the performance of its duties, and represents that it is duly licensed to engage in such activity.

*Id.* (emphasis added). Following the recitals section, the here-pertinent Conditions portion of the Contract provides:

> **2. <u>CONDITIONS:</u>**
> a) Contractor agrees to remove snow in excess of one (1.0) inch without prior contact by Owner, and snow removal activities will be completed before leaving the site whenever possible. Accumulation of snow will be determined by the U.S. Weather Bureau. The Contractor shall push away all snow and

---

[6] Despite several references to it in the parties' arguments, the Invoice has no bearing on the threshold duty issue here; although it may be relevant in determining the extent of Diamond's performance under the Contract (and, thus, potential breach), the document does not assist in evaluating whether the Contract ambiguously sets forth Diamond's duties or discerning the nature of Diamond's agreed-upon obligations. The Court thus cabins its review, for purposes of resolving the instant motion, to the four corners of the Contract.

[7] The Contract does not define what constitutes an "occur[r]ence."

[8] In reproducing these portions of the Contract, the Court, except where noted, copies the precise structure and formatting (including emphasis, spacing, and indentation) from the original document.

        subsequent drifts from the paved roadways, drives, streets, entries, deceleration lanes, curbs, sidewalks, building entries, loading dock areas, main entrances and the remainder of the Property by 7:30 a.m.

      b) Contractor shall start with the main and pedestrian thoroughfares, allowing ingress and egress to the site and building, taking care not to block dumpster areas, fire hydrants, building emergency exits or handicapped access ramps or handicapped parking spaces.

      c) Contractor shall shovel all sidewalks and entry walks to building so that these areas are totally free and clear of any snow. If snow is less than one (1.0) inch, a site inspection is still necessary to ensure the site is free of ice in all areas that are to be maintained per this Contract.

*Id.* at 4–5.

Construing the Contract together as a whole, the Conditions are reasonably incongruous with Recital B. On the one hand, a plausible reading—the one Diamond advocates—is that, per Recital B, the Contract required Diamond to remove snow or ice from the Cedarwood walkways[9] (including the one on which Gentry allegedly slipped and fell[10]) *only* after receiving a call from the complex's on-site manager. However, Condition 2(a), arguably qualifies this rule, providing that, when snowfall is above one inch (as measured by the U.S Weather Bureau), Diamond shall remove snow "without prior contact by Owner[.]" Condition 2(a) further specifies that, under such circumstances, Diamond "shall push away all snow and subsequent drifts" from, *inter alia*, sidewalks and building entries. Next, condition 2(b) (though not entirely clear) appears to further describe how Diamond agrees to perform snow removal services, specifying that Diamond will begin with the "main and pedestrian thoroughfares" and will take care not to block certain noted

---

[9] The Contract does not define "walkways," and it similarly uses (in the Conditions section) the terms "pedestrian thoroughfares[,]" "sidewalks[,]" and "entry walks" without apparent distinction. Absent elucidation as to the terms' specific meanings, a common sense reading of "walkways" renders it synonymous with "pedestrian thoroughfares[,]" "sidewalks[,]" and "entry walks" (*i.e.*, all are pedestrian paths not intended for vehicle use).

[10] The Complaint avers that Gentry "slipped on a snowy and/or icy sidewalk" in the Cedarwood complex. DE #1-2 at 7, ¶ 10.

areas.[11] The first line of Condition 2(c), then, may continue setting forth Diamond's duties in super-one-inch snowfall scenarios.[12] The second sentence of Condition 2(c) supports this reading, as it then outlines a new conditional duty, applicable in the opposite circumstance: "*If snow is less than one (1.0) inch*, a site inspection is still necessary to ensure the site is free of ice in all areas that are to be maintained per this Contract." (emphasis added).

The bulk of the parties' disagreement (and the Contract's inconsistency) flows from this sentence, as it is difficult to square with Diamond's duties under Recital B. Perhaps—as CF Kentucky and Friedman argue—Diamond categorically agrees to perform "a site inspection . . . to ensure that the site is free of ice in all areas that are to be maintained per this Contract[,]" when snow is less than one inch *and* absent any call from the on-site manager. But, then, what role would the Recital B-described on-site manager call really have in the process? That is, if Diamond agrees to inspect the Property and ensure that it is entirely free of ice 100% of the time,[13] why would the parties specify in Recital B that Diamond need only "push and salt"[14] walkways per on-site manager call? It thus seems that CF Kentucky and Friedman's collective reading of Condition 2(c)

---

[11] Maybe this applies only in a 1+ inch snowfall, but maybe not. The condition is standalone.

[12] Given the odd format of the Conditions—separated into three subparagraphs, with a significant qualifier (snow in excess of one (1.0) inch) included in the first and not mentioned in the second or third—Conditions 2(b) and the first line of 2(c) could also simply set forth the removal process for any amount of snow, rather than particularly relating to above-one-inch circumstances; *i.e.*, in conjunction with Recital B, Diamond could be agreeing to follow this procedure for lot clearance "per occur[r]ence" (again, undefined), as well as for walkway clearance (here, including pedestrian thoroughfares, sidewalks, and entry walks) "per call from on-site manager[,]" regardless of snowfall amount. Perhaps all bets are off if the snow magically reaches precisely one inch, which none of the conditions contemplate. Not really. Here, Diamond actually initiated service but the snow did not equal one inch. Why did it do this? Does that activity demonstrate an obligation to appear and inspect whenever the snow flies?

[13] Again, the phrase "the site . . . in *all areas* that are to be maintained per this Contract" (emphasis added) is incredibly broad and, though not specifically defined, reasonably includes walkways.

[14] It would seem, as a practical matter, that "ensur[ing] that the site [including walkways] is free of ice" and "push[ing] and salt[ing]" the walkways accomplish precisely the same goal. Perhaps, though, "push[ing]" is different from "shovel[ing]"—as listed in Condition 2(c).

and Recital B fails to give effect to the Recital B manager-call qualifier. However, Diamond's urged interpretation suffers from a like infirmity—it fails to give effect to the second sentence of Condition 2(c). Per Diamond's reading, Diamond had no duty to inspect the walkways for ice sans on-site manager call. But, if Diamond already agreed (per Recital B) to "push and salt" walkways "when needed per call from on-site manager[,]" what reason is there for the site inspection/ice-free surety requirement "in all areas that are to be maintained per this Contract[,]" which, naturally read, encompasses the Cedarwood walkways? The Recital B duty to push and salt walkways would seem to blanket any obligation to ensure that the walkways are free of ice, and it is unclear how the parties intended to effectuate the site inspection requirement in the walkway context.

And, of course, Diamond did (perhaps twice) come to the Property on the fateful day. Although the snow event did not (on this record) trigger the threshold, Diamond yet came unbidden. If Diamond is on-site due to a perceived need, can it simply ignore the pedestrian area? Does condition 2(c) fill this gap? Honestly, more than one reading makes sense, the very definition of ambiguity.[15]

In sum, it is impossible to plainly reconcile Recital B and the Conditions, including 2(c), without rendering some portion of either superfluous, based on the Contract document alone; it is thus impossible, on this record, to determine which side's characterization of Diamond's duties prevails. Diamond relies heavily on Recital B to the substantial exclusion of Condition 2(c); CF Kentucky and Friedman take precisely the opposite interpretive route. The Contract itself unambiguously vindicates neither position. The Contract—particularly, its delineation of

---

[15] Additional obligations that may color the interpretation include Diamond's agreement of "reasonable efforts and due care" in performance. *See* DE #8-5 at 4 (Recital C). Could Diamond see a need (*e.g.*, in a heavy snow situation) and, yet, not address pedestrian areas due to the lack of a call from the "on-site manager"? Perhaps the parties' course of dealing will shed some light on how Contract performance actually operated.

9

Diamond's walkway snow removal and de-icing duties—is, accordingly, one that "a reasonable person would find [ ] susceptible to different or inconsistent interpretations[,]" and, therefore, ambiguous. *Cantrell Supply*, 94 S.W.3d at 384–85. The Court is not permitted to resolve disputed factual issues regarding the parties' intended contractual interpretation. *Id.* at 385. Given the fact-dependent interpretive dispute regarding Diamond's obligations per the Contract (each side's view with some rational textual support)—that materially bears on each of the Third-Party Complaint's claims—judgment on the pleadings is improper. *See Winget*, 510 F.3d at 582 (quoting *Paskvan*, 946 F.2d at 1235) (describing Rule 12(c) judgment as appropriate only "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law").[16] Third-Party Plaintiffs' contractual view is plausible, and the well-pleaded and Contract-dependent facts state a claim for relief. This forecloses Rule 12(c) judgment.

## IV. Conclusion

As explained, the Court **DENIES** DE #27.

This the 23rd day of July, 2019.

Signed By:
*Robert E. Wier* REW
United States District Judge

---

[16] CF Kentucky and Friedman, in their briefing, identify several other factual issues that they deem material and preclusive of a pleadings judgment (namely, disputed questions surrounding the January 30, 2017 weather conditions, whether Diamond received any call on that date, and what services Diamond indeed performed). Given the Court's threshold conclusion that it is impossible to determine, at this stage (absent record development with facts illuminating the parties' contractual intent), the extent of Diamond's duties under the Contract, there is no need, yet, to assess the materiality of issues bearing on triggering circumstances or the extent of Diamond's performance.